UNITED STATED DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| ESTATE OF JODY PIDGEON,<br>Jennifer Pidgeon, Administrator, and<br>JENNIFER PIDGEON, Individually,<br>Plaintiffs,<br><br>v.<br><br>THE RUTLAND HOSPITAL, INC. d/b/a/<br>RUTLAND REGIONAL MEDICAL CENTER,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:26-cv-00007-wks |

# THE ESTATE OF JODY PIDGEON'S AND JENNIFER PIDGEON'S MOTION TO AMEND THE COMPLAINT TO CHANGE THE CAPTION OF COUNT II

Pursuant to F. R. Civ. P. 15(a), the plaintiffs move to amend the caption to Count II of the *Complaint* to conform to the text of Count II which includes claims under EMTALA alleging both a failure to provide an adequate Medical Screening Examination (MSE) and a failure to provide treatment necessary to stabilize Mr. Pidgeon's Emergency Medical Condition (EMC) upon his return by ambulance to Rutland Regional Medical Center (RRMC) on the afternoon of February 10, 2025. A red-line version of the proposed *Amended Complaint* is attached as *Exhibit 1*.

## Memorandum of Law

### I. Introduction

This case includes traditional medical malpractice and tort claims as well as a claim, in Count II, under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd.

EMTALA imposes two principal obligations on "participating hospitals," *i.e,* hospitals,

like RRMC, which accept payments from Medicare or the Centers for Medicare & Medicaid Services. These two obligations are commonly described as the screening requirement and the stabilization requirement.

First, EMTALA requires that RRMC provide a Medical Screening Examination (MSE) to determine whether a person who comes to the hospital's Emergency Department has an Emergency Medical Condition (EMC). As Mr. Pidgeon was not pregnant and not in labor, for the purposes of this case, an EMC means a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in placing the health of the individual in serious jeopardy, or serious impairment to bodily functions, or serious dysfunction of any bodily organ or part.[1]

Second, if the patient has an EMC, EMTALA mandates that the hospital stabilize the patient. This means that RRMC must provide, with the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition. If the hospital lacks the resources to treat the patient, it may transfer the individual to another medical facility, provided that the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the individual.[2]

## II. The *Complaint*

Count II of the *Complaint* (Doc. 1) alleges violations of EMTALA. It is based upon what happened, and what did not happen, when the Rutland Regional Ambulance Service returned Mr.

---

[1] 42 U.S.C. § 1395dd(a).

[2] 42 U.S.C. § 1395dd(b).

Pidgeon to RRMC on February 10, 2025.

The *Complaint* alleges that on February 8, 2025, Mr. Pidgeon went to the RRMC Emergency Department and was admitted to the hospital. On February 10, 2025, Mr. Pidgeon, who was suffering from a number of medical conditions, including leukemia, was told that he had to leave the hospital. Mr. Pidgeon made clear that he did not wish to leave the hospital. RRMC called the Rutland City Police Department (RCPD), who came to the hospital. At the time he was made to leave, hospital employees said Mr. Pidgeon was "faking it." RCPD officers put Mr. Pidgeon in his car, told him he had to leave, and said he would be arrested if he returned. Mr. Pidgeon drove away, but was in a series of car accidents in the next few minutes. The Rutland City Police Department came to the scene of the last accident and summoned an ambulance. An ambulance operated by the Rutland Regional Ambulance Service came to the scene and Emergency Medical Technicians (EMTs) employed by the Service returned Mr. Pidgeon to the hospital at about 3:28 p.m. Upon their arrival at the hospital, Mr. Pidgeon was "writhing in pain" and saying "help." The Ambulance Service EMTs were told that they and Mr. Pidgeon would have to wait in the hallway outside the hospital's Emergency Department. An RRMC employee said that Mr. Pidgeon was "faking it." In response, an ambulance service EMT said "I guarantee you he's not f...king faking it, he's hot to the touch and he's septic." An RRMC doctor, Daniel Burton, who saw Mr. Pidgeon "failed to do a proper assessment of Mr. Pidgeon and failed to provide any care to Mr. Pidgeon." Because of the failure of the RRMC providers to care for Mr. Pidgeon, the EMTs attempted to provide care to Mr. Pidgeon while he was in the hallway. Eventually, the EMTs and an RRMC security guard moved Mr. Pidgeon into a room in the ED. Dr. Burton stood outside the room, but failed to provide "physical assistance" to Mr. Pidgeon. An EMT told Dr. Burton that Mr. Pidgeon's condition was rapidly deteriorating. Dr.

Burton entered the room, asked Mr. Pidgeon if he wanted to be intubated, and left the room when Mr. Pidgeon said "yes." After this, another RRMC doctor intervened and ordered that Mr. Pidgeon be moved to the "resuscitation room." Mr. Pidgeon died when Dr. Burton was attempting to intubate him. A hospital employee who wished to remain anonymous called the Rutland City Police Department. A detective and an employee of Office of the Chief Medical Examiner came to the hospital. The Office of the Chief Medical Examiner ordered an autopsy. The Office of the Chief Medical Examiner determined that the "cause of death" was leukemia and other significant conditions that included perforation of Mr. Pidgeon's bowel by an ingested tooth pick and the "manner of death" was "accident (an ingested toothpick)."

## III. The Caption of Count II of the *Complaint*

The caption to Count II currently says: "Failure to Provide Appropriate Screening." Paragraphs 110 and 111 relate to a failure to provide an appropriate screening. However, paragraph 112 says: "Employees of RRMC refused or failed to provide treatment necessary to stabilize Mr. Pidgeon's emergency medical condition upon his return to RRMC."

## IV. The Standards Governing a Motion to Amend A Complaint

In this motion, the plaintiffs seek the Court's permission to change the caption of Count II from its current language to "Failure to Provide Appropriate Screening and Failure to Stabilize," to make clear that plaintiffs allege both a failure to screen and a failure to stabilize Mr. Pidgeon upon his return to RRMC on February 10, 2025.

This Court applies Rule 15(a) liberally.[3] Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." The Second

---

[3] Shovah v. Mercure, 44 F. Supp. 3d 504, 508 (D. Vt. 2014); Buksh v. Sarchino, 736 F. Supp. 3d 221, 225 (D. Vt. 2024); Crowell v. Kirkpatrick, 262 F.R.D. 401 (D. Vt. 2009); Standard Fire Ins. Co. v. Donnelly, 689 F. Supp. 2d 696, 699 (D. Vt. 2010).

Circuit has held that a Rule 15(a) motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and ... prejudice to the opposing party."[4]

When a motion to amend is filed after a scheduling order deadline, good cause must be shown. However, the cutoff for failure to amend the pleadings is February 26, 2027, almost four months from the date of this motion.

No prejudice will come to the defendant as a result of the proposed amendment. A fair reading of Count II the *Complaint* make clear that the plaintiffs allege both a failure to screen and a failure to stabilize when Mr. Pidgeon was returned to the hospital. And, it is important to note that the defendant has not yet taken any depositions. The depositions of Jennifer Pidgeon, her father, Barry Snoots, her stepmother, Nancy Snoots and the plaintiffs' expert, Dr. Richard Wolfe, are scheduled for November 6, 2026 (Ms. Pidgeon), November 18, 2026 (Mr. and Ms. Snoots) and November 23, 2026 (Dr. Wolfe).

**V. Conclusion**

The Court should grant *Plaintiffs' Motion to Amend the Complaint to Change the Caption of Count II.*

Dated: November 3, 2026

ESTATE OF JODY PIDGEON,
Jennifer Pidgeon, Administrator and
JENNIFER PIDGEON, Individually

By: /s/Michael F. Hanley

Michael F. Hanley
Plante & Hanley, P.C.
Post Office Box 708
White River Junction, VT 05001
802-295-3151, Ext. 102
mfhanley@plantehanley.com

---

4 Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 603 (2d Cir. 2005).